**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Case No. 2:26-CR-011** |
| **Plaintiffs,** ) | |
| ) | **JUDGE ALGENON L. MARBLEY** |
| **v.** ) | |
| ) | |
| **BRENDAN CONKLIN** ) | |
| ) | |
| **Defendant.** ) | |

**DEFENDANT'S MOTION TO REQUIRE**
**_IN CAMERA_ REVIEW OF GRAND JURY TRANSCRIPTS**

Defendant Brendan Conklin, through is undersigned counsel, hereby respectfully moves the Court, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii) and Fed. R. Crim. P. 12(b)(3)(v), for an order requiring the _in camera_ review of Grand Jury transcripts related to the Superseding Indictment returned against the defendant on April 2, 2026. The reasons for this Motion are more fully set forth in the attached Memorandum in Support.

Respectfully submitted,

_/s/ Michael J. Hunter_
Michael J. Hunter (0076815)
**Flannery | Georgalis, LLC**
175 S. Third Street, Suite 285
Columbus, Ohio 43215
T: (614) 324-4139
F: (614) 526-0601
mhunter@flannerygeorgalis.com

_Counsel for Defendant Brendan Conklin_

## MEMORANDUM IN SUPPORT

On April 2, 2026, a Federal Grand Jury sitting in this district returned a Superseding Indictment charging Mr. Conklin with in Count One with False Impersonation of an Officer or Employee of the United States, in violation of 18 U.S.C. § 912, and in Count Two with Impersonator Making Arrest or Search, in violation of 18 U.S.C. § 913. (Doc #: 25). This case is set for jury trial on May 4, 2026. (*See* Doc #: 29).

By way of background, the events underlying the December 14, 2023, detention, arrest, and search of Victim 1 detailed in the Superseding Indictment arise from Mr. Conklin's operation of a business as a bail recovery agent he lawfully formed under Ohio law in 2023. While operating as a bail or fugitive recovery agent, Mr. Conklin is alleged to have exceeded his lawful authority under Ohio law, as well as impersonating a federal officer. (*See* Govt Response to Defendant's Motion to Dismiss Count Two of Indictment, Doc #: 31, at p 8, for a description of the alleged encounter on December 14, 2023). For more than two years after the December 14, 2023, incident, officers with the Westerville, Ohio Division of Police had been unsuccessful in convincing state and local prosecutors to bring even state misdemeanor charges against Mr. Conklin based on the December 14, 2023, incident. However, in conjunction with the Federal Bureau of Investigation (FBI), in January of 2026, the Government obtained a Federal Indictment and secured an arrest warrant against Mr. Conklin on federal charges. (Doc #: 1; Doc #: 7).

In response to Mr. Conklin's Motion to Dismiss Court Two of the Indictment (Doc #: 19) on grounds of multiplicity of charges, the Government moved the Court to stay its ruling on the pending motion while it returned to the Grand Jury to seek a superseding indictment to cure the facially apparent multiplicity issue. (*See* Govt Motion to Hold Briefing in Abeyance, Doc #: 21). The Government filed its Response. (Doc #: 31). The Defendant's Reply and Motion to dismiss

Count Two of the Superseding Indictment on the basis that it too is multiplicitous (Doc #: 32) is pending.

Prior to presentation of this case to the Grand Jury on April 2, 2026, undersigned counsel represented to the Government that the police report summarizing the interview of Victim 1— which had been turned over to the defense in discovery under a protective order issued by the Court—contained exculpatory evidence. This evidence included that Victim 1 acknowledged that after Mr. Conklin had detained, arrested, and searched Victim 1 on December 14, 2023, he first correctly identified himself as being with the Ohio Fugitive Apprehension Program, his bail or fugitive recovery business. (*See* Redacted Westerville Division of Police Progress of Investigation Report, pp. 1, 8, 10, attached hereto as **Exhibit A**). Counsel alerted the Government that Victim 1 had further relayed in the summary of the interview provided to the defense that Victim 1 did not actually believe that Mr. Conklin was a federal law enforcement officer during the encounter. (*See id*.).

Since these representations to the Government, the undersigned has received a copy of the recorded interview of Victim 1 via a public records request to the Westerville Division of Police and has confirmed that Victim 1 made these statements to law enforcement when interviewed on February 1, 2024, in fact stating that Victim 1 knew that Mr. Conklin was not a federal officer and only "a bounty hunter" on December 14, 2023. On April 2, 2026, the Grand Jury returned the Superseding Indictment against Mr. Conklin. (*See* Doc #: 25).

Upon information and belief, neither these exculpatory facts, nor additional exculpatory evidence already turned over to the defense were presented to the Grand Jury—as required by

3

Department of Justice policy[1]—at the time the Grand Jury returned the Superseding Indictment. Specifically, there are five pieces of *Brady / Giglio* evidence likely omitted in the presentation of the case to the Grand Jury which call into question whether or not any federal crime was committed:

1. That Victim 1 told investigators that prior to Mr. Conklin allegedly indicating that he was a "federal officer" he first informed Victim 1 that he was with the Ohio Fugitive Apprehension Program, his registered business with the State of Ohio. (*See* **Exhibit A**).

2. That Victim 1 was already detained, had been handcuffed, and had been searched by Mr. Conklin under his representation that he was with the Ohio Fugitive Apprehension Program when he allegedly stated that he was a "federal officer". (*Id.*).

3. That Victim 1 told investigators that they did not believe Mr. Conklin when he allegedly told Victim 1 that he was a "federal officer" and believed during the entirety of the encounter only that Mr. Conklin was a "bounty hunter". (Copy of audio/video recording of the interview of Victim 1 will be made available to the Court upon request).

4. That Mr. Conklin properly identified himself as a bail or fugitive recovery agent with the Fugitive Apprehension Program on December 14, 2023, in video/audio recordings and police documents with the Blendon Township Police Department. (*See* Blendon Township Call for Service Report, attached hereto as **Exhibit B**; *see also* copy of video/audio recordings available upon request).

5. That Mr. Conklin properly identified himself as a bail or fugitive recovery agent with the Fugitive Apprehension Program on December 14, 2023, in a recording with the Columbus Division of Police. (*See* Transcript of Audio Recording, attached hereto as **Exhibit C**).[2]

---

[1] U.S. Dep't of Justice, Justice Manual § 9-11.233 – Presentation of Exculpatory Evidence (Jan. 2026) ("It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person.").

[2] As part of discovery in this matter, the Government provided defense with a copy of an audio file entitled "CPD Audio of 911 call from Conklin." The audio file is a call between Columbus Division of Police, "Tech 154," and Brendan Conklin on December 14, 2023. On April 7, 2026, defense used the assistance of Rev.com to create a transcript of this audio file, including speaker identification and timestamps, which is provided as Exhibit C. Counsel will provide a copy of the audio file to the Court if requested.

Additionally, as legal advisor to the Grand Jury,[3] there is a substantial basis to believe that the prosecutor failed to advise the Grand Jury that the mere recitation that Mr. Conklin was a "federal officer," even if true, was protected speech unless accompanied by overt action on his part which caused Victim 1 to follow a course of action Victim 1 would not have otherwise taken. *See United States v. Wade*, 962 F.3d 1004, 1010 (7th Cir. 2020); *see also United States v. Malik*, Case No. 23-3819, 2024 WL 1075070, at *2-3 (6th Cir. Mar. 12 2024) (citing *Wade*). Victim 1's video/audio recorded statement that they never believed that Mr. Conklin was a federal officer refutes an essential element of the offenses contained in the Superseding Indictment. Due Process requires that statement to have been presented to the Grand Jury before the Grand Jury was asked to determine if Mr. Conklin had committed a federal offense.

Defendant thus moves the Court to Order the Government to produce the transcripts of its instructions to the Grand Jury as well as the witness testimony presented to obtain the Superseding Indictment returned on April 2, 2026, for *in camera* inspection to determine if the withholding of exculpatory and impeachment evidence and evidence negating an essential element of the offenses from the Grand Jury was so pervasive as to render the Superseding Indictment violative of Mr. Conklin's Due Process rights.

**<u>LAW AND ARGUMENT</u>**

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(v), a party must raise by pretrial motion a challenge to the indictment if there was "an error in the grand-jury proceeding." Fed. R. Crim. P. 12(b)(3)(v). To establish if such a violation occurred a defendant may obtain grand jury

---

[3] "As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law to enable it intelligently to decide whether a crime has been committed." *United States v. Wahib*, 578 F. Supp. 3d 951, 955-56 (N.D. Ohio 2022) (citations omitted).

proceedings if they show that something that occurred during the proceeding provides grounds to dismiss the indictment. Fed. R. Crim. P. 6(e)(3)(E)(ii). The Sixth Circuit requires a party seeking disclosure under Rule 6(e)(3)(E)(i) to demonstrate "(1) the disclosure is sought preliminarily to or in connection with a judicial proceeding, and (2) a compelling [or particularized] need for disclosure exists which will overcome the general presumption in favor of grand jury secrecy." *In re Grand Jury 89-4-72*, 932 F.2d 481, 483 (6th Cir. 1991) (cleaned up).

The party requesting disclosure must show a "compelling necessity for [the] material— that is, (a) the material sought will prevent a possible injustice, (b) the need for disclosure outweighs the need for secrecy, and (c) the request is narrowly tailored to provide only material so needed." *FDIC v. Ernst & Whinney*, 921 F.2d 83, 86 (6th Cir. 1990); *see also Douglas Oil Co. of Cal. v. Petrol Stops Northwest*, 441 U.S. 211, 222 (1979) (setting out the same factors). "Where a particularized need for disclosure has been demonstrated, a district court that is properly seized of the question is given wide discretion to decide whether it is the need for secrecy that predominates, or the need for disclosure." *In re Grand Jury Proceedings*, 841 F.2d 1264, 1268-69 (6th Cir. 1988).

The particularized need for disclosure in this case is compelling. This case presents a misdemeanor case that was rejected for prosecution by the City of Westerville and now, more than two years later, has been repackaged and shoe-horned into a federal prosecution. This case has been charged federally, twice, despite the fact that the alleged victim of the offenses has indicated in a recorded video interview in the Government's possession that Mr. Conklin properly identified himself as a bail or fugitive recovery agent after Victim 1 had been arrested, detained, and searched. In the video/audio recording, Victim 1 further recounts that they never believed that Mr. Conklin was a law enforcement officer at all, much less a federal officer. In other words, because Victim 1

admitted that they they did not believe that Mr. Conklin was a federal officer, Victim 1 necessarily took no action as a result of Mr. Conklin's alleged impersonation of a federal officer.

As explained by the court in *Wade*:

> We do, however, want to take care in delineating the difference between the proper scope of § 912 on the one hand and criminalizing mere boastful speech on the other. That difference is found in the second element of the offense: the acts-as-such element . . .. Our cases applying § 912's acts-as-such clause have involved overt action taken to cause the victim to follow a course of action he would not have otherwise pursued.

*Wade*, 962 F.3d at 1010

Unless the exculpatory evidence contained in Victim 1's recorded interview and investigative summary was presented to the Grand Jury along with the evidence that Mr. Conklin properly represented himself to be a bail or fugitive recovery agent not only to Victim 1 but to two different law enforcement agencies on December 14, 2023, there is a significant risk that Mr. Conklin has been indicted and forced to stand trial for offenses that he did not commit and that a properly advised Grand Jury would not have indicted. This is particularly the case as to Count One of the Superseding Indictment when considered in conjunction with the real possibility that the prosecutor failed to provide the Grand Jury legal instruction on the "acts-as-such" element under Section 912.

The facts surrounding this case, the cumulative nature of the *Brady / Giglio* evidence likely withheld from the Grand Jury, and the likely failure to instruct on the application of the law surrounding 18 U.S.C. § 912's "acts-as-such" clause—which criminalizes false impersonation of a federal officer only when "'coupled with an overt act in conformity with' the impersonation" (*United States v. Malik*, No. 23-3819, 2024 WL 1075070, at *2 (6th Cir. Mar. 12, 2024) (citations

omitted)—make this the rare case where *in camera* review of the Grand Jury proceedings is warranted to "prevent a possible injustice." *FDIC*, 921 F.2d at 86.

As the Government comprehensibly explained in its recitation of the alleged facts of this case and its description of the voluminous amount of discovery provided—under protective order—in this case (*see* Govt Response to Defendant's Motion to Dismiss Count Two of Indictment, Doc #: 31, at pp 4-8), almost the entirety of the facts of the case are known to the defense, and so the general presumption in favor of Grand Jury secrecy should yield in the interest of the need for *in camera* disclosure for the limited purpose of the Court to review to determine if something occurred during the Grand Jury proceedings which provides grounds to dismiss the indictment. Fed. R. Crim. P. 6(e)(3)(E)(ii).

## **CONCLUSION**

Therefore, it is respectfully requested that the Court order the Government to provide the Grand Jury transcripts related to the Superseding Indictment returned against the defendant on April 2, 2026, for the limited purpose of an *in camera* review.

Respectfully submitted,

*/s/ Michael J. Hunter*
Michael J. Hunter (0076815)
**Flannery | Georgalis, LLC**
175 S. Third Street, Suite 285
Columbus, Ohio 43215
T: (614) 324-4139
F: (614) 526-0601
mhunter@flannerygeorgalis.com

*Counsel for Defendant Brendan Conklin*

8

## CERTIFICATE OF SERVICE

I hereby certify that on April 7, 2026, a copy of the foregoing was filed with the Court electronically via the Court's electronic filing system. Notice of this filing will be sent to the represented parties by operation of the Court's electronic filing system.

/s/ Michael J. Hunter
Michael J. Hunter (0076815)

*Counsel for Defendant Brendan Conklin*