**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO.  2:26-CR-00011** |
| **Plaintiff,** | |
| **v.** | **JUDGE ALGENON L. MARBLEY** |
| **BRENDAN CONKLIN,** | |
| **Defendant.** | |

**RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION**
**TO REQUIRE *IN CAMERA* REVIEW OF GRAND JURY TRANSCRIPTS**

The United States of America hereby submits its response to Defendant Brendan

Conklin's Motion to require this Court to conduct an *in camera* review of the April 2, 2026,

grand jury transcript related to the Superseding Indictment in this case and to Conklin's

Supplement to his Motion (Docs. 33 & 36).

Conklin's Motion should fail for multiple reasons.  First, the standard for a Court to order

disclosure and review of grand jury material is exceptionally high, and Conklin has not met it.

Second, the Supreme Court, the Sixth Circuit, and other courts of appeal have repeatedly held, in

clear and unqualified terms, that there is no duty on the government to present exculpatory

evidence to the grand jury, and thus, Conklin's Motion is not based in the law.  Third, the

material that Conklin claims to be exculpatory is not even exculpatory.  The United States asks

this Court to deny Conklin's Motion.

I.    **REQUESTING THE DISCLOSURE OF GRAND JURY MATERIAL IS A UNIQUE REQUEST FOR EXCEPTIONAL RELIEF AND CONKLIN HAS FAILED TO CLEAR THE HIGH BAR FOR THAT RELIEF.**

> Federal Rule of Criminal Procedure 6(e) governs the disclosure of grand jury proceedings.  The Rule emphasizes a presumption of secrecy and mandates that, generally, "[u]nless the rules provide otherwise[,]" participants in the proceeding "must not disclose a matter occurring before the grand jury." Rule 6(e)(3) enumerates several specific exceptions to the general rule of nondisclosure.

*In re Grand Jury 05-02 (WPB) & 07-103 (WPB)*, No. 9:25-MC-80920-RLR, 2025 WL 2076030, at *2 (S.D. Fla. July 23, 2025) (quoting Fed. R. Crim. Pro 6(e)(2)(B)).

The exceptions listed in Rule 6(e)(3) are sacrosanct.  "[W]ithout an unambiguous statement to the contrary from Congress, *we cannot, and must not*, breach grand jury secrecy for any purpose other than those embodied by the Rule.  *In re Grand Jury 89-4-72*, 932 F.2d 481, 488 (6th Cir. 1991) (emphasis added).

A litigant's "burden of establishing particularized need is necessarily heavy." *United States v. Arrick*, No. 18-3479, 2018 WL 8344588, at *1 (6th Cir. Nov. 28, 2018) (quoting *In re Grand Jury 89-4-72*, 932 F.2d 481, 489 (6th Cir. 1991)).

 The Sixth Circuit has also explained that "[t]he Federal Rules of Criminal Procedure allow for the disclosure of grand jury information *only when* the defendant makes a showing that grounds might exist for a motion to dismiss based on matters occurring before the grand jury. This showing *must be demonstrated with particularity*." *United States v. Kirkpatrick*, 172 F.3d 50 (6th Cir. 1998) (citations omitted) (emphasis added).

Conklin's Motion fails to establish the necessary compelling need for disclosure to overcome the general presumption in favor of grand jury secrecy.  Essentially, counsel for Conklin seeks to second guess the grand jury decision to indict his client by insisting there should have been a presentation of his defense in advance of trial without offering any legal

2

authority for his claim.  There is no legal basis for Conklin's claim that exculpatory material must be presented to the Grand Jury.  Furthermore, there is no legal basis to argue that the material that Conklin believes is exculpatory is in fact exculpatory.

II.       **THERE IS NO DUTY ON THE GOVERNMENT TO PRESENT EXCULPATORY EVIDENCE TO THE GRAND JURY.**

More than 30 years ago, the United States Supreme Court established the government has no duty to disclose exculpatory evidence to the grand jury.  *United States v. Williams*, 504 U.S. 36 (1992).   This alone should end this inquiry and be the basis for Conklin's Motion to be denied.  In *Williams*, the Supreme Court explained that "[i]t is axiomatic that the grand jury sits not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge."  504 U.S. at 51.  In *Williams*, the Supreme Court explained that given the purpose and nature of grand jury proceedings, a defendant lacks many of the rights that he has before a criminal court.  *Williams*, 504 U.S. at 49-50 (observing that the rule against double jeopardy "does not bar a grand jury from returning an indictment when a prior grand jury has refused to do so," "the Sixth Amendment right to counsel does not attach when an individual is summoned to appear before the grand jury," that the exclusionary rule did not extend to grand jury proceedings, and that the rule against hearsay did not apply in grand jury proceedings).  Examining the history of grand juries, the Supreme Court noted that "it is the grand jury's function not 'to enquire ... upon what foundation [the charge may be] denied,' or otherwise to try the suspect's defenses, but only to examine 'upon what foundation [the charge] is made' by the prosecutor."  *Williams*, 504 U.S. at 51–52 (citation omitted).

Evaluating the role of the grand jury and the purpose it serves, the *Williams* court held that the government has no duty to disclose even "substantial exculpatory evidence" in its possession to the grand jury.  504 U.S. 36 (1992).   As stated above, the province of the grand

3

jury was "not to determine guilt or innocence, but to assess whether there is adequate basis for bringing a criminal charge.  That has always been so; and to make the assessment it has always been thought sufficient to hear only the prosecutor's side."  *Id.* at 51.  After its thorough legal and historical analysis, the Supreme Court concluded that "[i]mposing upon the prosecutor a legal obligation to present exculpatory evidence in his possession would be incompatible with this system."  *Id.* at 52; *see id.* at 51 ("[R]equiring the prosecutor to present exculpatory as well as inculpatory evidence would alter the grand jury's historical role, transforming it from an accusatory to an adjudicatory body.").

As if *Williams* were not enough basis to deny Conklin's Motion, the Sixth circuit has made the rule pristinely clear.  Following *Williams*, the Sixth Circuit has consistently reiterated that the "Constitution does not require prosecutors to present ***any*** exculpatory evidence to the grand jury."  *Lester v. Roberts*, 986 F.3d 599, 608-609 (6th Cir. 2021) (emphasis in original); *see*, *e.g.*, *Carver v. Mack*, 112 F. App'x 432, 437 (6th Cir. 2004) ("[T]he Supreme Court in *Williams* announced there is no federal duty to present exculpatory evidence to a grand jury."); *United States v. Angel*, 355 F.3d 462, 475 (6th Cir. 2004) ("The government… has no judicially enforceable duty to provide a grand jury with exculpatory evidence.").

Furthermore, the rule in the Sixth Circuit is not an outlier, when compared to the other circuits.  Other circuits have also rebuffed efforts to challenge indictments because of an alleged failure to present exculpatory evidence.  See *United States v. Bove*, 888 F.3d 606, 611 (2d Cir. 2018); *United States v. Darden*, 688 F.3d 382, 387 (8th Cir. 2012); *United States v. Bingham*, 653 F.3d 983, 999 (9th Cir. 2011); *United States v. Casas*, 425 F.3d 23, 38 (1st Cir. 2005); *United States v. Waldon*, 363 F.3d 1103 (11th Cir. 2004); *United States v. Byron*, 994 F.2d 747, 748 (10th Cir. 1993); United States v. Isgro, 974 F.2d 1091, 1096 (9th Cir. 1992); *United States v.*

4

*Dynkowski*, 720 F. Supp. 2d 475, 479 (D. Del. 2010).

Conklin's insistence that the traditional rule of grand jury secrecy be cast aside so that this Court can evaluate the government's grand jury presentation in this case is wholly at odds with *Williams*, which "[e]ssentially remov[ed] all general supervisory authority over the grand jury from the federal courts." *United States v. Myers*, 123 F.3d 350, 356 (6th Cir.); *see Williams*, 504 U.S. at 50 ("[A]ny power federal courts may have to fashion, on their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings."). In so ruling, the Supreme Court made clear that the government is not required to guess a target's defense and then present that defense to the grand jury. Because the government has not run afoul of any constitutional right in this case, Conklin's motion should fail on this basis alone.[1]

Likewise, the U.S. Department of Justice Manual cannot serve as the basis for judicial relief of any kind, much less the extraordinary remedy of disclosure and review of protected grand jury transcripts. The reason for this is straight forward: The Justice Manual "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." *United States v. Myers*, 123 F.3d 350, 356 (6th Cir. 1997) (quoting current JM 1-1.200); *see also United States v. Garcia-Guia*, No. 3:07-CR-081, 2009 U.S. Dist. LEXIS 48841, at *13 (S.D. Ohio May 12, 2009) ("The Sixth Circuit has held that the U.S. Attorney's Manual does not provide rights to third-parties which can be enforced in a civil or criminal proceeding."); *United States v. Shaw*, 684 F. Supp. 2d 914, 919 (W.D. Ky. 2009) (explaining that the Justice Manual establishes "no enforceable rights,

---

[1] Contrary to defense counsel's speculation, law enforcement will testify that there were no attempts made in the last two years to present the Victim 1 incident to any "state and local prosecutors to even bring state misdemeanor charges against Mr. Conklin". *See* Doc. 33, pp. 2 & 6.

much less constitutional ones").

Furthermore, even if the Justice Manual were to confer rights – which it does not – and even if there were a legal obligation on the government to present exculpatory evidence to the grand jury – which there is not – the Justice Manual requires only that "*substantial evidence that directly negates the guilt* of the subject of the investigation" be presented.  As explained below, the evidence that Conklin points to is not that – it is not substantial evidence that directly negates guilt.

### III.        CONKLIN'S PROFFERED EVIDENE IS NOT EXCULPATORY.

There is no doubt that the government is required to provide exculpatory evidence to the defendant in sufficient time that it can be used efficiently at trial.  *Brady v. Maryland*, 373 U.S. 83 (1963)).  As the pleadings of Conklin make clear, counsel for Conklin is well aware of the facts and circumstances surrounding this case due to the extensive discovery already provided.  In fact, a vast majority of the cases cited by Conklin offers no authority for the current situation as they involve claimants attempting to gain grand jury information that is *not* already in their possession.  *See In re Grand Jury 89-4-72*, 932 F.2d 481 (6th Cir.1991) (Disciplinary Counsel sought documentation and the U.S. Attorney's Office did not oppose); *In re Grand Jury Proceedings*, 841 F.2d 1264 (6th Cir.1988) (involving a civil antitrust lawsuit document request).  In contrast to those matters, Conklin is seeking for this Court to apply his theories of defense based on evidence already known, in advance of trial.

Counsel for Conklin is certainly free to argue to the jury at trial any of these facts he might deem exculpatory or even mitigating (while the undersigned may disagree as to their merit).  However, the government has no duty to disclose all of that same information to a federal grand jury, the body whose purpose is to determine whether there is a sufficient basis to

6

even pursue a criminal charge in the first instance.

Basically, the factual grounds for Conklin's motion rest entirely on a partisan interpretation of his theory of defense and his version of exculpatory evidence.  According to Conklin, since he first identified himself as working for "OFAP"[2] at the time of the arrest of Victim 1, his subsequent identification of himself as a "federal officer" to Victim 1 is of no legal import, since Conklin had already implemented her detention under the authority of the mythical OFAP.  Further, counsel for Conklin suggests that the subjective belief of Victim 1 is also a factor in this proceeding and an element of this offense.[3]  Such a reading of the charging statutes, 18 U.S.C. §§ 912 and 913, is inconsistent with the wording of the statutes themselves as well as the applicable elements of those elements.

To prove a violation of § 912, the government must prove: 1) the defendant was not an officer or employee of the United States; 2) the defendant pretended to be an officer of the United States; 3) the defendant acted as an officer of the United States; and 4) the defendant committed these acts knowingly.  *United v. Malik*, No. 23-3819, 2024 WL 1075070, at *2 (6th Cir. Mar. 12, 2024).  Furthermore, contrary to the assertion of defense counsel (Doc. 33, pp. 5-7), the Sixth Circuit has declined to adopt the Seventh Circuit's requirement that the impersonator's action cause the victim to follow a course of action they would not have otherwise pursued.  *Malik*, 2024 WL 1075070, at *2-3 (citing *United States v. Wade*, 962 F.3d

---

[2] The Ohio Fugitive Apprehension Program (OFAP) consists solely of the defendant (who has never been an Ohio law enforcement official in any capacity) as a self-incorporated entity which included a fake license plate ("OFAP 39" – registered to 120 Marconi Boulevard in Columbus, Ohio, which is the headquarters of the Columbus Division of Police).  Conklin applied this license plate on his repurchased retired police vehicle.

[3] On April 12, 2026, counsel for Conklin submitted a supplemental motion adding information that Victim 1 had been convicted of several felonies and adding them to his claims of "exculpatory" evidence that should have been presented to the grand jury.  This material is proper trial impeachment material but warrants no additional discussion or analysis regarding the grand jury presentation.

1004, 1010 (7th Cir. 2020)).

Nowhere in these elements is the subjective belief of the victim relevant to the elements. Furthermore, the victim in this case acted in accordance with Conklin's commands and actions – he pulled her over, boxed her car in, pointed a gun at her, gave her verbal commands, placed her in handcuffs, locked her in the back of his vehicle[4] (which was a former police vehicle), and held her in custody, eventually releasing her from custody later that night.

Whether Conklin's claims of being a federal officer were subjectively believable under the circumstances is not an element of the offenses charged. While counsel for Conklin has focused on Victim 1's subjective belief in Conklin's claim to be a federal officer,[5] it is anticipated that the testimony will establish that Victim 1 suspected that Conklin was lying but had no way of knowing or being sure given his actions and the surrounding circumstances. The victim's subjective belief about whether Conklin was actually a federal law enforcement officer is still not an element of the offense. Likewise, the fact that Conklin may have identified himself as a bail recovery agent does not necessarily negate any element of the offenses charged.

A review of the facts in *Malik* suggest that the actions of the defendant there were far less authentic and appearing of legitimacy as Conklin's actions here. There, the defendant was dressed in jeans and a polo. He appeared "jittery" and "shaky" and he lacked "nerves of steel." His badge was of a local police department, where he worked. To a second witness, the defendant was "shaking" and could not produce identification. Unlike the instant case, the defendant in *Malik* had made no overt attempts to act out his impersonation beyond his own

---

[4] In doing so, Conklin unintentionally locked himself out of his own vehicle – while the Victim 1 was handcuffed, in the back seat of his vehicle, a former police vehicle – and as a result, local police came to the scene to break into Conklin's vehicle.

[5] Counsel for Conklin has claimed that Victim 1 "*knew* that Mr. Conklin was not a federal officer" (emphasis added). (Doc. 33, p. 3)

8

comments. Nonetheless, the Sixth Circuit affirmed the conviction finding that "deceptive conduct" alone suffices when the defendant appear to be acting consistent with the assumed character of a federal officer.[6]

In contrast to *Malik*, here, Conklin's actions are replete with acting as a federal officer to an objective observer. He was driving a former law enforcement vehicle, equipped with blue and red emergency lights which he deployed when he pulled the victim over. He was wearing a bullet proof tactical vest. He was wearing a radio on top of the vest. He was carrying a firearm in a holster on his hip. He had a gold badge on his belt. The badge stated "United States Bail & Fugitive Enforcement Recovery Agent." The letters "U" and "S" appeared on the badge, on the left and right of the seal of the United States. On his vest, he was wearing a cloth badge, with the seal of the United States and the letters "U" and "S" on either side of the seal. He identified himself as a federal officer to Victim 1, in response to being asked if he was a bounty hunter. He had a laptop computer in the center compartment of his vehicle, like many police vehicles have. He had a spotlight at the front driver side of his vehicle, like many police vehicles have. He had a "cage" for prisoners, in the back of his vehicle, like many police vehicles have.

It is farcical to suggest that by indicating he worked for Ohio Fugitive Apprehension Program, Conklin absolved himself of acting as a federal officer and negated all of the aforementioned facts. When the victim then asked him if he was a bounty hunter, Conklin indicated that he was a federal officer.

Conklin has no right to ask for exculpatory evidence to be presented to the grand jury, and what he is calling exculpatory is not even exculpatory. Whether Conklin also claimed other

---

[6] The Sixth Circuit in *Malik* also contradicted defense counsel's argument that Conklin's claim to be a federal officer could somehow be considered "protected speech" as "impersonating the police"… "is not protected speech". *Malik citing Novak v. City of Parma*, 33 F.4th 296, 305 (6th Cir. 2022) *further citations omitted.*

"authority" for his actions (the self-fabricated OFAP), this does not excuse or eliminate that he also pretended to be an officer of the United States and acted as such while interacting, arresting and detaining Victim 1.  Counsel for Conklin can certainly argue the viability of this defense to the trial jury but the government has absolutely no obligation to endorse nor repeat it to the grand jury.

In addition, contrary to Conklin's claims, the "evidence" he proffers is already within the possession of the defense and is not necessarily exculpatory further making his attack on the grand jury process moot.  The government has no obligation to present Conklin's evolving theory of defense, some of which are inconsistent with the charging statutes, during the investigative stage of the grand jury process.  The motion should be denied.

## IV.        Conclusion.

For all of the foregoing reasons, the United States submits that instant motion should be denied.

Respectfully submitted,

DOMINICK S. GERACE II
United States Attorney

By:   /s Kevin W. Kelley
      KEVIN W. KELLEY (OH 0042406)
      DAMOUN DELAVIZ (PA 309631)
      Assistant United States Attorneys
